Plaintiff was insured by defendant against loss (within the limits of the policy contract) from disability from sickness or accident. The policy contains the following condition restricting liability thereunder, to-wit: "This Company's liability shall be one-half of the amount which would otherwise be payable under this Policy for claims presented for diseases peculiar to women, and of the Generative organs to both sex * * *".
On February 24, 1944, plaintiff suffered an attack of acute appendicitis and Dr. Walsworth was called in to attend her. She was then confined to bed at her home. In keeping with the provisions of the policy, Dr. Walsworth promptly made out a report to defendant of plaintiff's physical condition. This report was made on a regular blank form provided by defendant and it disclosed that plaintiff suffered from acute appendicitis. Dr. Walsworth stated in his report that plaintiff was confined to bed from the attack and that confinement would continue for ten to twenty days.
On March 7th, on direction of Dr. Walsworth, plaintiff was removed to the St. Francis Sanitarium in the City of Monroe, Louisiana, and on the following day an appendectomy was performed by the doctor, at which time a fibrous tumor of the uterus, of long standing was also removed. This latter afflication is a disease peculiar to women.
On the day the operation was performed, Dr. Walsworth made another report to defendant, on like blank, in which it was stated that plaintiff's disease was "acute appendicitis, fibroid uterus"; that the appendix had been removed and that in his opinion, plaintiff's confinement to bed would continue for some sixty to ninety days. Reports, identical in character, were made *Page 698 
weekly by the doctor to defendant, during plaintiff's disability, the last one being on April 26th. There were eight in all subsequent to the operation.
When defendant received Dr. Walsworth's report of February 24th, its agent in the City of Monroe paid plaintiff $5 to cover one week's disability, but no further payments to her were made nor did defendant offer to make additional payments until after she was forced to employ counsel to prosecute her claim for disability. This was in July. At that time defendant offered to pay plaintiff $22.50 on the theory that her disability was due to a disease peculiar to women. The offer was refused and this suit followed.
Plaintiff sued to recover judgment for nine weeks' disability at $5 per week for penalty equal thereto, and for $50 attorney's fee. The provisions of Act No. 310 of 1910 are invoked.
Plaintiff predicates her demand for penalty and attorney's fee upon the theory that defendant's refusal to pay her the weekly amounts as fixed by the policy, within the delay fixed by the act, was not supported by just and reasonable grounds.
Defendant resists the suit on two grounds, to-wit:
1. That its liability under the policy is only $22.50, which amount, it is alleged and shown, was tendered to plaintiff's counsel and thereafter deposited in the registry of the court; and,
2. That even though it be held that defendant owes plaintiff more than the amount tendered, defendant should not be condemned to pay the penalty and attorney's fee because, all facts and circumstances considered, its action was motivated by just and reasonable grounds.
There was judgment for plaintiff for the principal sum of $40; for $40 penalty and for $50 attorney's fee. Defendant, after unsuccessful effort for new trial or rehearing, appealed to this court.
[1] Defendant's contention that plaintiff's disability, following the operation, was due to removal of the tumor is clearly negatived by the testimony of Dr. Walsworth, the attending physician. He testified that the operation was made imperative by the attack of acute appendicitis and that the tumor was removed as a secondary consideration; that it would have been very unwise not to have removed the tumor at the time. He says that the incision to remove the appendix was adequate for the removal of the tumor; that the tumor, to his knowledge, was of long standing; and that plaintiff had persisted in her refusal to have it removed, although he had more than once suggested the advisibility of doing so. It had not caused disability. The doctor also testified that the period of plaintiff's disability, after the operation, was what might be expected from the appendectomy alone.
It has not been shown, nor could it well be shown, to what extent, if any, removal of the tumor contributed to plaintiff's disability. Since it is shown that the period of her disability was not in excess of that to be expected from an appendectomy of this character, it is reasonable to assume, as we do, that for all practical purposes, under the provisions of the policy, removal of the tumor did not have the effect of making the period of disability greater than would have been had the tumor not been removed. The disability was the result of disease common to both sexes. It was not the result of disease of a generative organ.
[2] Section 1 of Act No. 310 of 1910 forbids any company from writing health, life and/or accident insurance policies in which payments of indemnities shall be deferred longer than thirty days from written notice and proof to the company by the attending physician, informing it of the sickness and accident entitling the assured to payment under the terms of a policy, and Sections 2 and 3 of the act read as follows:
"Section 2. Be it enacted, etc., That payment by such companies to the assured shall not be delayed for a longer period than thirty days from due notice and proof of disability, without just and reasonable grounds such as to put a reasonable and prudent business man on his guard.
"Section 3. Be it enacted, etc., That the insurance company guilty of such delay in payment, unless upon just and reasonable grounds, shall pay to the assured, as a penalty, double the amount due under the terms of the policy or contract, during the period of delay, with attorney's fees to be determined by the tribunal before whom suit is instituted."
Defendant largely bases its contention that it should not be condemned to pay the penalty and attorney's fee for which sued, upon:
A. The statement in Dr. Walsworth's report of February 24th, that plaintiff *Page 699 
would be confined to bed from acute appendicitis for a period of ten to twenty days, and
B. What purports to be a resume of plaintiff's hospital record in a letter to defendant signed by the record clerk of the sanitarium. In this letter it is said that plaintiff's physician told her that she had a tumor and advised operation therefor as soon as possible, and described the operation as "supravaginal hysterectomy, appendectomy." However, this letter was written July 17th, nearly three months after plaintiff's disability had ceased. Therefore, it can not well be said that defendant's refusal to make payments from March 8th to April 26th was due to the contents of this letter. Dr. Walsworth, when confronted with the letter, testified: "This does not correspond with the facts or my surgical record." Surely, the letter, as said by Dr. Walsworth, does not reflect the true facts of the case but is in contradiction of the facts as are disclosed in the weekly reports made to the defendant. The record clerk of the sanitarium was not called as a witness, although doubtless available, and we are left in uncertainty as to the source of the information incorporated in her letter to defendant.
In Dr. Walsworth's report of February 24th, he simply stated that plaintiff would be confined to bed from acute appendicitis for a period of from ten to twenty days. Nothing whatever was said in the report about an operation. Evidently the doctor meant that without an operation she would be confined to bed, disabled, for the period stated. This construction finds support in the fact that plaintiff was not operated upon until nearly two weeks after the report was made.
It is argued on behalf of defendant that since the doctor's reports to defendant after the operation disclosed that plaintiff's disability would continue for a period of from sixty to ninety days, the additional period of disability over that stated in the report of February 24th, was attributable to the removal of the tumor. This contention is not well founded for the reason stated above, to-wit:
That the report of February 24th did not contemplate disability following an operation.
In neither of the reports to defendant is it said that the tumor was removed. It is stated in each of the last eight reports that plaintiff's disease was "acute appendicitis, fibrous uterus". No further reference is made to the latter ailment. It is stated in the last eight reports that the appendix had been removed. Therefore, from these reports the conclusion could not well be drawn that the tumor had been removed or that its presence made any contribution to plaintiff's disability. Had defendant made an investigation it could easily have learned the true facts by interviewing Dr. Walsworth, who lived in the City of Monroe. Therefore, on the face of these reports, defendant's duty was obvious. It had no valid excuse to withhold from defendant the payments due her.
In brief, after stating that during the period of acute appendicitis, defendant owed plaintiff $5 per week, and that disability in excess of this period should be accredited to the removal of the tumor, it is said by defendant's counsel: "* * * that being a bona fide contention the defendant was entitled to have it judicially determined before their liability was completely shown and the defendant's contention is that there are no double payments and Attorney's fees due."
A position analogous to the above was taken by defendant in the case of Campasi v. Mutual Benefit Health Accident Association, 207 La. 758, 22 So.2d 55, 57, and in disposing of it, the court said: "It is argued for the insurance company that, as the question of interpretation of the exempting clause in question had not been decided by a Louisiana court when this suit was filed, the company acted 'upon just and reasonable grounds' in denying liability. The company had the right, of course, to test the question of liability under the facts of the case, and to demand a judicial interpretation of the exempting clause in the policy of insurance, — but not at the expense of the assured — except upon just and reasonable grounds. * * * The obvious reason for the adoption of Act No. 310 of 1910 is that, if the monthly installments provided for in a policy of insurance, such as sick benefits, are not paid promptly, they are not benefits at all, as far as the assured is concerned. Suits like this, as a rule, are cases in which the law's delay amounts to a denial of justice. * * *"
The act provides that the amount of attorney's fee in a case of this character shall be determined by the court before which the case was tried. Defendant makes no complaint *Page 700 
of the fee allowed by the lower court. It appears to us to be reasonable compensation for the services rendered by plaintiff's counsel.
After a careful study of the record in this case, and giving to defendant the benefit of every circumstance in its favor, we have reached the same conclusion as was reached by the lower court and that is that defendant's position was not supported by just and reasonable grounds and for this reason it should be cast for the amounts for which plaintiff sued. For the reasons herein assigned, the judgment appealed from is affirmed with costs.